ting it aside. In this, as in similar cases, it is difficult and almost impossible for the court, obliged to learn through depositions the natural features of a tract which it has never seen, and of which no topographical map is exhibited, to arrive at any certain or satisfactory conclusions as to the true locality of various lines. That duty is properly confided to the surveyor, who, on the ground, compares the calls of the grant and the indications of the diseño with the natural monuments of the country before him, and who, assisted by information obtained on the spot, and such as may be derived from consulting the grants and diseños of colindantes or adjoining proprietors, is able to give a more just location to the survey than this court can hope to arrive at. In the case of Haydel v. Du Fresne, 17 How. [58 U. S.] 30, it is remarked by the supreme court: "Great confusion and litigation would ensue if the judicial tribunals, state and federal, were permitted to interfere and overthrow the public surveys on no other ground than an opinion that they could have the work in the field better done, and divisions more equitably made, than the department of public lands could do." These observations apply with much force to the cases which are now being brought before this court. By the law of 1851 [9 Stat. 631], as well as by the nature and circumstances of the case, much discretion is confided to the surveyor general. Before the court should disturb or set aside a survey made by him, it ought to be satisfied that the decree of confirmation has been plainly departed from, or that some clear and obvious error has been committed. I do not consider that the evidence justifies such a conclusion with regard to the survey and location before the court. An order overruling the objections and approving the survey must therefore be entered.

---

## Case No. 14,621.

### UNITED STATES v. BOLING.

[4 Cranch, C. C. 579.] [1]

Circuit Court, District of Columbia. Oct. Term, 1835.

INDICTMENT—CONCLUSION.

An indictment must conclude against the government of the United States.

[Suit by the United States against Joseph Boling.]

Indictment for robbery; against the peace of the United States.

Motion in arrest of judgment, because the indictment did not conclude against the government of the United States. See Act Cong. March 3. 1801, § 2 (2 Stat. 115), "supplementary," &c.

THE COURT (nem. con.) arrested the judgment.

---

[1] [Reported by Hon. William Cranch, Chief Judge.]

## Case No. 14,622.

### UNITED STATES v. BOLLMAN et al.

[1 Cranch, C. C. 373.] [1]

Circuit Court, District of Columbia. Jan. 30, 1807.

CRIMINAL PROCEDURE—BENCH WARRANT—INDICTMENT—MESSAGES FROM PRESIDENT—ATTACHMENT—MOTION TO COMMIT—TREASON.

1. This court will issue a bench warrant against a person charged with treason, upon ex parte affidavits, before any presentment or indictment made or found by a grand jury; and, when arrested, will commit him to the prison of this court, without stating when or where he is to answer for the offence.

[Cited in Re McDonald, Case No. 8,751; Ex parte Morrill, 35 Fed. 267.]

[Cited in U. S. v. Eldredge (Utah) 13 Pac. 676.]

2. Upon an application for a bench-warrant on a charge of treason as well as upon a motion to commit for the same cause, messages from the president of the United States to congress may be read.

3. An attachment for not returning a writ of habeas corpus at the appointed time, will not be issued until three days shall have expired after the service of the writ.

4. Upon the motion to commit for trial, the party accused may be heard by counsel.

[Cited in U. S. v. Anon., 21 Fed. 768.]

[5. Cited in State v. Boulter (Wyo.) 39 Pac. 884, to the point that an information verified on information and belief by the prosecuting attorney does not of itself constitute "probable cause supported by affidavit," as provided by Const. art. 1, § 4.]

Mr. Jones, the attorney of the United States for the district of Columbia, moved the court to issue a bench-warrant upon a charge of treason against Erick Bollman and Samuel Swartwout, who had been brought, by a military force, from New Orleans, and detained here under a military guard. This motion was founded upon the affidavit of General Wilkinson, made in New Orleans, and a printed copy of the president's message to congress of the 22d of January, 1807. See 4 Cranch [8 U. S.] Append. note a.

Mr. Jones stated that he made the motion in obedience to instructions received from the president of the United States, whose wish was that they should be surrendered to the civil authority.

Mr. Jones, in support of the motion for a warrant to arrest the prisoners upon the charge of treason. contended that, although the ultimate object of the contemplated expedition might be the conquest of the Spanish province of Mexico, yet if it was also intended to seize and plunder New Orleans. to supply the means of accomplishing the ultimate object, such intent would be treasonable. and the embodying and marching of a military force. with that intent. would be an overt act of levying war against the United States. And that if the prisoners,

---

[1] [Reported by Hon. William Cranch, Chief Judge.]